ORIGINAL

U.S.D.C. Atlanta

AUG 24 2010

JAMES N. HATTEN, Clerk
By pmw
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL INDICTMENT |
| v. | |
| GEOFFREY A. GISH, and<br>MYRA J. ETTENBOROUGH | NO. 1:10-CR-370 |
| Defendants. | |

THE GRAND JURY CHARGES THAT:

<u>COUNT ONE</u>
Conspiracy
18 U.S.C. § 371

1. Beginning in or about 2005, the exact date being unknown to the Grand Jury, and continuing thereafter through on or about May 17, 2006, in the Northern District of Georgia and elsewhere, defendants GEOFFREY A. GISH and MYRA J. ETTENBOROUGH did knowingly and willfully conspire, combine, confederate, and agree and have a tacit understanding with each other to commit certain offenses against the United States, to wit, to knowingly and willfully devise and participate in a scheme and artifice to defraud investment clients of Weston Rutledge Financial Services, Inc. ("Weston Rutledge"), to obtain money and property therefrom by means of materially false and fraudulent pretenses, representations, and promises, causing interstate wire communications to be made and the mails and private and commercial interstate carriers to be used in furtherance of the fraudulent

scheme to obtain said money and property, in violation of Title 18, United States Code, Sections 1341 and 1343.

## BACKGROUND

2. At all times relevant to this Indictment:

a. Defendant GISH founded, operated, and controlled the business, assets, and affairs of Weston Rutledge, which was headquartered at 2876 Johnson Ferry Road, Marietta, Georgia, through in or about August 2005, and thereafter, at 1792 Woodstock Road, Suite 450, Roswell, Georgia. Weston Rutledge offered purported investment opportunities to clients and prospective clients. Defendant GISH was Weston Rutledge's primary sales person. Defendant GISH also established an office for Weston Rutledge in Denton, Texas, out of which D.D., a sales representative, operated.

b. Defendant ETTENBOROUGH was the Office Manager for Weston Rutledge. As such, defendant ETTENBOROUGH managed the company's employees and its day-to-day operations, which included answering questions from investors about Weston Rutledge's investment offerings and their accounts at Weston Rutledge. The day-to-day operations that defendant ETTENBOROUGH managed and oversaw included the distribution of written materials describing Weston Rutledge's investment offerings to investors and potential investors; the creation and distribution to investors of account statements; and coordinating and tracking distributions of principle and "earnings"

to investors. Defendant ETTENBOROUGH managed and maintained Weston Rutledge's various bank accounts at Wachovia and Wells Fargo, including bank accounts established to receive and disburse investment funds raised from investors.

c. Weston Rutledge's investment offerings included three pooled investment funds or entities named or referred to as "Zamindari Capital," the "Lexington International Fund," (the "Lexington Fund") and "Oxford Adams." Zamindari Capital purportedly was involved in bond or note trading "projects" or "programs" that varied in length. The Lexington Fund purportedly was involved in currency trading. Oxford Adams purportedly was involved in index or options investing.

d. Between 2004 and on or about May 17, 2006, the date that Weston Rutledge was placed into receivership, Weston Rutledge obtained investments in these funds or entities totaling approximately $29 million from investors across the United States. Zamindari Capital received the most investments, over $25 million, while the Lexington Fund received investments in excess of $3.9 million. Oxford Adams received only approximately $150,000. However, when Weston Rutledge was placed into receivership on or about May 17, 2006, the bank accounts placed into receivership held a little over $1 million.

3

## MANNER AND MEANS OF THE CONSPIRACY

3. For the purpose of obtaining investments and raising funds, defendant GISH made and caused to be made false statements and representations to investors and potential investors about the uses, safety, security, and profits and earnings of investments in Zamindari Capital and the Lexington Fund. Defendant ETTENBOROUGH, as Weston Rutledge's Office Manager, falsely portrayed to investors that Zamindari Capital and the Lexington Fund were successful investments that generated the returns and "earnings" that defendant GISH promised and caused to be promised. Defendants GISH and ETTENBOROUGH concealed and omitted from investors and potential investors material facts regarding the true uses of investor funds and the lack of any actual and meaningful earnings or gains generated by the true uses of their funds.

4. When meeting with investors and potential investors, defendant GISH falsely promised and represented that funds invested in Zamindari Capital were safe because they would be held in a bank account that was blocked, would not be touched, and not depleted during the course of the investment. Defendant GISH provided investors and caused investors to be provided with written materials repeating and confirming this false promise and representation. The written materials regarding Zamindari Capital falsely promised and represented that "Funds will remain in a reserve account at Wachovia Bank or similar institution;" that

4

"Funds will reside at a major bank in a non-interest bearing account;" and that "Participants' funds will reside in an unencumbered account at a top-tier national bank." Some prospective investors also received letters providing additional guarantees that their investment in Zamindari Capital would "reside in a non-depletion, blocked account at either Wachovia or Wells-Fargo Bank (our choice) for the duration of the project."

5.  Defendant GISH also falsely promised and represented that investments in Zamindari Capital generated earnings or gains that were much greater than could be achieved with other, more routine investments. The written materials describing the Zamindari Capital investment that defendant GISH distributed and caused to be distributed falsely promised and represented that funds invested in Zamindari Capital 90 day projects or programs "earned" or generated gains of 10-15% per month. In or about February 2006, defendant GISH edited and caused to be edited the written materials distributed to investors to remove specific references to Zamindari Capital's promised and historical returns. However, defendants GISH and ETTENBOROUGH continued to make and cause to be made false promises and representations to investors and prospective investors about the success of, and earnings from, investments in Zamindari Capital.

6.  Defendant Gish portrayed the Lexington Fund as an alternate investment to Zamindari Capital. Defendant GISH falsely

promised and represented to investors and potential investors that funds invested in the Lexington Fund were used for or in connection with currency trading. Defendant GISH provided investors and caused investors to be provided with written materials repeating and confirming this false promise and representation. The written materials describing the Lexington Fund falsely promised and represented that monies invested in it were used for currency trading by "fund managers" who issued statements to Weston Rutledge and the Lexington Fund "on 60-day intervals." These written materials also falsely promised and represented that the "fund managers" had years of achieving "impressive returns through international currency transactions."

7.    Defendant GISH also falsely promised and represented that funds invested in the Lexington Fund returned profits or earnings far in excess of investments available elsewhere. The written materials describing the Lexington Fund falsely stated and represented that the investment returned 4-8% per month based on the amount invested and historical returns, and that in their "worst month" the fund managers had returned "+4%."

8.    Defendants GISH and ETTENBOROUGH sent and caused to be sent to investors monthly statements that falsely reflected earnings on and the growth of their funds invested in Zamindari Capital and the Lexington Fund. These statements showed increases in investors' total account balances as a result of earnings or

gains from the supposed investments.

9. Defendants GISH and ETTENBOROUGH used and caused to be used funds invested in Zamindari Capital and the Lexington Fund in a variety of ways that were inconsistent with their representations to investors and potential investors about the uses, safety, security, and performance of investments in those funds. Defendant GISH and ETTENBOROUGH's uses of monies invested in Zamindari Capital and the Lexington Fund included, but were not limited to the following:

a. Payments to investors who requested withdrawals or distributions of principal and earnings from their accounts in Zamindari Capital, the Lexington Fund, and the Oxford Adams fund;

b. Transfers to third parties, including but not limited to Z.G., K.J., S.R., M.G., D.A., D.T. and others, purportedly for or in connection with investments or, in certain cases, as loans;

c. Payments and transfers to defendant GISH and to third parties on his behalf and for his benefit;

d. Transfers to the bank account out of which defendants GISH and ETTENBOROUGH paid Weston Rutledge's operating expenses, including but not limited to defendant ETTENBOROUGH's salary, other employee salaries, office rent, and travel expenses;

e. Payment of commissions to sales representative D.D. and referral fees to investors for the purpose of recruiting new investors in Zamindari Capital and the Lexington Fund; and

  f. Transfers of funds between and among the Wachovia bank accounts that defendants GISH and ETTENBOROUGH established for the Zamindari Capital, Lexington Fund, and the Oxford Adams investments, as well as other Wachovia bank accounts established and controlled by defendants GISH and ETTENBOROUGH that were not related to the Zamindari Capital or the Lexington Fund.

10. Weston Rutledge, Zamindari Capital, and the Lexington Fund did not receive significant and meaningful funds, earnings, and gains back from and as a result of defendants GISH and ETTENBOROUGH's uses of investor monies.  Defendants GISH and ETTENBOROUGH's representations about Zamindari Capital and Lexington Fund earnings and gains, including the account statements that defendants sent and caused to be sent to investors, were not supported by and consistent with any earnings and gains returned or received from the supposed investments and loans made with investor funds.

11. Defendants GISH and ETTENBOROUGH failed to tell investors and potential investors of the material facts alleged in Paragraph 9 and 10.  Defendants GISH and ETTENBOROUGH concealed from investors and potential investors that monies invested in Zamindari Capital were not kept in a blocked or non-depletion account and that monies invested in the Lexington Fund were not used for currency trading, but rather were used for a variety of purposes that were inconsistent with their representations to investors and potential investors.  Defendants GISH and ETTENBOROUGH also concealed that

Weston Rutledge, Zamindari Capital, and the Lexington Fund did not receive and have earnings and gains supporting and that were consistent with their representations to investors.

12. In or about December 2005, and until on or about May 17, 2006, when it was placed into receivership, Weston Rutledge did not have sufficient funds on hand to satisfy all investor requests for withdrawals of principal and earnings. To help fund requested withdrawals, defendants GISH and ETTENBOROUGH attempted to retrieve some of the monies sent to Z.G. Defendants GISH and ETTENBOROUGH were unsuccessful and received no money back. Defendants GISH and ETTENBOROUGH delayed paying certain withdrawal requests until they could fund requested withdrawals with monies from other investors.

## OVERT ACTS IN FURTHERANCE OF THE CONSPIRACY

13. In furtherance of the conspiracy, the defendants committed overt acts in the Northern District of Georgia and elsewhere including but not limited to the following:

a. In or about January 2005, defendants GISH and ETTENBOROUGH distributed and caused to be distributed to investors and potential investors a "newsletter" providing an "update" on Weston Rutledge, including information about Zamindari Capital and the Lexington Fund.

b. On or about February 10, 2005, defendant GISH sent and caused to be sent an email to Investors K.R. and R.B., regarding Zamindari Capital.

c. On or about July 21, 2005, defendant ETTENBOROUGH sent and caused to be sent an email to Investor J.P.B. regarding Zamindari Capital.

d. On or about July 22, 2005, defendant GISH caused a Weston Rutledge employee to send an email to Investor R.W. regarding Zamindari Capital.

e. On or about September 7, 2005, defendants GISH and ETTENBOROUGH wired and caused to be wired $100,000 to Investor B.R.

f. On or about October 25, 2005, defendants GISH and ETTENBOROUGH obtained and caused to be obtained an official or certified check in the amount of $166,101.77 from Wachovia Bank drawn on the Zamindari Capital account number XXXXXXXX1006 at Wachovia Bank.

g. On or about November 5, 2005, defendants GISH and ETTENBOROUGH caused to be emailed and mailed a "newsletter" to investors.

h. On or about November 17, 2005, defendants GISH and ETTENBOROUGH transferred and caused to be transferred $35,000 from Wachovia Bank Zamindari Capital account number XXXXXXXX1006 to Wachovia Bank Weston Rutledge account number XXXXXXXX2627.

i. On or about December 2 and 3, 2005, defendants GISH and ETTENBOROUGH caused Weston Rutledge to have an "open house" for investors and potential investors.

j. On or about December 27, 2005, defendant ETTENBOROUGH

sent and caused to be sent an email to Investor J.H. regarding Zamindari Capital.

k.   On or about February 3, 2006, defendants GISH and ETTENBOROUGH transferred and caused to be transferred $22,000 from Wachovia Bank Zamindari Capital account number XXXXXXXX1006 to defendant GISH's Wachovia Bank account number XXXXXXXX3512.

l.   On or about February 24, 2006, defendants GISH and ETTENBOROUGH transferred and caused to be transferred $400,000 from Wachovia Bank Zamindari Capital account number XXXXXXXX1006 to Wachovia Bank Lexington Fund account number XXXXXXXX5391.

m.   In or about February 2006, defendants GISH and ETTENBOROUGH opened and caused to be opened account number XXX-XX3898 for Zamindari Capital and account number XXX-XXX3880 for Lexington Fund at Wells Fargo Bank.

n. On or about March 15, 2006, defendant ETTENBOROUGH sent and caused to be sent an email to Investor A.R. regarding Zamindari Capital.

o.   On or about March 23, 2006, defendant GISH caused a Weston Rutledge employee to send an email to Investor M.B. regarding Zamindari Capital.

p.   On or about April 6, 2006, defendant GISH caused attorney T.M. to send a facsimile to the Georgia Secretary of State.

q.   On or about April 12, 2006, defendants GISH and ETTENBOROUGH transferred and caused to be transferred $12,000 from

11

Wachovia Bank Zamindari Capital account number XXXXXXXX1006 to defendant GISH's Wachovia Bank account number XXXXXXXX3512.

r. In or about April 2006, defendants GISH and ETTENBOROUGH caused to be distributed K-1 tax forms to Zamindari Capital investors.

s. In or about March and April 2006, defendant GISH caused Investor W.F. to invest $200,453.59 in the Lexington Fund, which funds were wired into the Lexington Fund Wells Fargo account number XXX-XXX3880 on or about April 27, 2006.

t. On or about April 28, 2006, defendant ETTENBOROUGH issued and caused to be issued to Zamindari Capital Investor B.R. a check in the amount of $30,000, drawn on the Lexington Fund Wells Fargo account number XXX-XXX3880.

u. Defendant GISH caused Investor D.G. to invest $50,000 in Zamindari Capital on or about May 2, 2006.

v. Counts Two through Eleven of this Indictment are incorporated herein by reference as additional overt acts of this conspiracy.

All in violation of Title 18, United States Code, Section 371.

### COUNTS TWO THROUGH FIVE
### MAIL FRAUD
### 18 U.S.C. §§ 1341 and 2

14. The Grand Jury re-alleges and incorporates the allegations in Paragraph Two as if fully set forth herein.

15. Beginning in 2005, the exact date being unknown to the

Grand Jury, and continuing thereafter through on or about May 17, 2006, in the Northern District of Georgia and elsewhere, defendants GEOFFREY A. GISH and MYRA J. ETTENBOROUGH, aided and abetted by each other, did knowingly and willfully devise and intend to devise a scheme and artifice to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, well knowing and having reason to know that said pretenses, representations, and promises were and would be false, all designed to induce investors to invest in and maintain their investment in Zamindari Capital and the Lexington Fund, fraudulent investments offered by Weston Rutledge Financial Services, Inc. ("Weston Rutledge").

16. It was part of the fraudulent scheme for defendants GISH and ETTENBOROUGH to cause investors and potential investors across the United States to invest in, maintain, and increase their investment in the Zamindari Capital Fund and the Lexington Fund, as alleged in Paragraph 3 above.

17. It was further part of the fraudulent scheme for defendant GISH to make and cause to be made false promises, statements, and representations about the uses, safety, and security of investments in Zamindari Capital as alleged in Paragraph 4 above, which is re-alleged and incorporated herein, for the purpose of obtaining investments and raising funds from investors and prospective investors.

13

18. It was further part of the fraudulent scheme for defendant GISH to make and cause others to make false promises, statements, and representations about the earnings and gains of monies invested in Zamindari Capital as alleged in Paragraph 5.

19. It was further part of the fraudulent scheme for defendant GISH to make and cause to be made false promises, statements, and representations about the use of investments in the Lexington Fund as alleged in Paragraph 6 above, which is re-alleged and incorporated herein, for the purpose of obtaining investments and raising funds from clients and prospective clients.

20. It was further part of the fraudulent scheme for defendant GISH to make and cause others to make false promises, statements, and representations about the earnings and gains of monies invested in the Lexington Fund as alleged in Paragraph 7 above, which is re-alleged and incorporated herein.

21. It was further part of the fraudulent scheme for defendants GISH and ETTENBOROUGH to send and caused to be sent to investors monthly statements falsely reflecting the accumulation and growth of their investments in Zamindari Capital and the Lexington Fund as alleged in Paragraph 8 above, which is re-alleged and incorporated herein.

22. It was further part of the fraudulent scheme for defendants GISH and ETTENBOROUGH to use and expend and cause to be used and expended investor funds for purposes that were

inconsistent with the uses and purposes represented to existing and prospective investors as alleged in Paragraph 9 above, which is re-alleged and incorporated herein.

23. It was further part of the fraudulent scheme that Defendants' representations about Zamindari Capital and Lexington Fund earnings and gains, including the account statements that defendants sent and caused to be sent to investors, were not supported by and consistent with any earnings and gains returned or received from defendants' uses of investor funds, as alleged in Paragraph 10 above, which is re-alleged and incorporated herein.

24. It was further part of the fraudulent scheme that defendants GISH and ETTENBOROUGH failed to tell and concealed from Zamindari Capital and Lexington Fund investors material facts regarding the true uses, safety, and security of their funds and the lack of any actual, significant, and meaningful profits or earnings from such uses, as alleged in Paragraph 11 above, which is re-alleged and incorporated herein.

25. It was further part of the fraudulent scheme that in or about December 2005, and until on or about May 17, 2006, when Weston Rutledge was placed into receivership, defendants GISH and ETTENBOROUGH did not have sufficient funds on hand to satisfy all withdrawal requests and delayed paying certain large withdrawal requests until they could fund requested withdrawals with monies from other investors, as alleged in Paragraph 12 above, which is

re-alleged and incorporated herein.

## EXECUTION OF THE SCHEME

26. On or about the dates set forth in Column B below, in the Northern District of Georgia and elsewhere, the defendants, GEOFFREY A. GISH and MYRA J. ETTENBOROUGH for the purpose of executing and attempting to execute the aforesaid scheme and artifice to defraud, to obtain money by means of false pretenses, did knowingly cause to be delivered by mail and by any private or commercial interstate carrier according to the direction thereon, the following mail matter:

| A Count | B Date | C Description |
| --- | --- | --- |
| 2 | 10/11/2005 | Mailing to Investor R.W. from Weston Rutledge regarding $30,000 Zamindari Capital investment |
| 3 | 12/16/2005 | Mailing to Investor A.R. from Weston Rutledge regarding $10,000 Zamindari Capital investment |
| 4 | 3/27/2006 | Federal Express from Investor M.B. to Weston Rutledge regarding $10,000 Zamindari Capital investment |
| 5 | 3/29/2006 | Federal Express from Investor W.F. to Weston Rutledge regarding $200,453.59 Lexington Fund Investment |

all in violation of Title 18, United States Code, Sections 1341 and 2.

## COUNTS SIX THROUGH ELEVEN
### WIRE FRAUD
### 18 U.S.C. §§ 1343 and 2

27. The Grand Jury re-alleges and incorporates the allegations in Paragraphs Two Through Twelve and Paragraphs Fifteen through Twenty-five above, as if fully set forth herein.

24. On or about the dates set forth in Column B below, in the Northern District of Georgia and elsewhere, the defendants, GEOFFREY A. GISH and MYRA J. ETTENBOROUGH for the purpose of executing and attempting to execute the aforesaid scheme and artifice to defraud, to obtain money by means of false pretenses, did transmit and cause to be transmitted in interstate commerce, by means of a wire communication, certain signs, signals and sounds, as more fully described below:

| A<br>Count | B<br>Date | C<br>Amount | D<br>Description |
|---|---|---|---|
| 6 | 9/23/2005 | $200,000 | Transfer of funds by investor B.R. to Zamindari Capital Acct. XXXXXXXX1006 |
| 7 | 9/26/2005 | n/a | Email to Investor J.P.B. from Weston Rutledge regarding receipt for $10,000 Zamindari Capital investment |
| 8 | 10/25/2005 | $166,007.73 | Transfer of funds by Investor P.G. to Zamindari Capital Acct. XXXXXXXX1006 |
| 9 | 12/14/2005 | $25,000 | Transfer of funds by Investor J.H. to Zamindari Capital Acct. XXXXXXXX1006 |

17

| A Count | B Date | C Amount | D Description |
|---|---|---|---|
| 10 | 12/21/2005 | n/a | Facsimile from Investor M. &P.B. regarding $80,000 deposit into Lexington Acct.XXXXXXXXX5391 |
| 11 | 1/27/2006 | $35,000 | Transfer of funds by Investor M.M. to Zamindari Capital Acct. XXXXXXXXX1006 |

all in violation of Title 18, United States Code, Sections 1343 and 2.

A  *True Bill*  BILL

_____
FOREPERSON

SALLY QUILLIAN YATES
UNITED STATES ATTORNEY

_____
DOUGLAS W. GILFILLAN
ASSISTANT UNITED STATES ATTORNEY
600 U.S. Courthouse
75 Spring Street, S.W.
Atlanta, GA 30303
404/581-6000
Georgia Bar No.  294713